IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BARRY D. PONDER, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:06-CV-219-Y |
| | § | |
| JO ANNE B. BARNHART, | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| DEFENDANT. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b).  The Findings, Conclusions and Recommendation of

the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A.      STATEMENT OF THE CASE

Plaintiff Barry D. Ponder brings this action pursuant to Section 405(g) of the Social Security

Act, Title 42 of the United States Code, for judicial review of a final decision of the Commissioner

of Social Security denying his claim for disability insurance benefits under Title II of the Social

Security Act.  Ponder applied for disability benefits on January 29, 2002, claiming disability

beginning June 27, 2001.  (Tr. 62).   He continued to meet the insured status requirements at all

times relevant to the Commissioner's decision.  (Tr. 52).

After the Social Security Administration denied Ponder's application for benefits both

initially and on reconsideration, he requested a hearing before an administrative law judge (the "ALJ").  ALJ Ward King held a hearing on August 20, 2003 in Fort Worth, Texas.  (Tr. 365). Ponder was represented by counsel at the hearing.  On September 22, 2003, the ALJ issued a decision that Ponder was not disabled because he had the residual functional capacity (RFC) to perform a modified range of light work activity[1] and there were a significant number of jobs in the national and local economies that Ponder could perform.  (Tr.15-20).  The Appeals Council denied Ponder's request for review of his case, leaving the ALJ's decision to stand as the final decision of the Commissioner.  (Tr. 4).

B.  STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity.  42 U.S.C. § 423(d)(1)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed.  20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527.  Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c). At the third step, disability will be found if a claimant's impairment or combination

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  20 C.F.R. § 404.1567(b).

of impairments meets or equals an impairment listed in the appendix to the regulations.  *Id.* §
404.1520(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone,
the impairment or impairments must prevent the claimant from returning to his past relevant work.
*Id.* § 404.1520(e).  And fifth, the impairment must prevent the claimant from doing any  work,
considering the claimant's residual functional capacity, age, education, and past work experience.
*Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled.
If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the
process to show that there is other gainful employment the claimant is capable of performing in spite
of his existing impairments. *Crowley*, 197 F.3d at 198.  If the Commissioner meets this burden, the
claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276
F.3d 716, 718 (5th Cir. 2002).   A finding at any point in the five-step process that a claimant is
disabled or not disabled is conclusive and terminates the analysis.  *Masterson v. Barnhart*, 309 F.3d
267, 272 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner
applied the correct legal standards and whether the decision is supported by substantial evidence in
the record as a whole.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995);  *Hollis v. Bowen*, 837
F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible
mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is
more than a mere scintilla, but less than a preponderance. *Id.*  A finding of no substantial evidence
is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.*

Conflicts in the evidence are for the Commissioner and not the court to resolve. *Masterson*, 309 F.3d at 272. The court will not re-weigh the evidence, try the questions *de novo,* or substitute its judgment for the Commissioner's, even if the court believes the evidence weighs against the Commissioner's decision. *Id.*; *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.     ISSUES

      1.     Whether the ALJ gave appropriate consideration to treating source opinions;

      2.     Whether the ALJ's credibility assessment is supported by substantial evidence; and

      3.     Whether the decision that Ponder is not disabled is supported by substantial evidence.

D.     ADMINISTRATIVE RECORD

      1.     Medical History

Ponder has rheumatoid arthritis with complaints of joint pain reported as early as 1992. (Tr. 277). His primary care physician, internist Benjamin Domagas, M.D., treated Ponder for complaints of wrist pain and swelling in his knuckles and ordered laboratory tests to rule out lupus. (Tr. 278). After conservative treatment failed, Ponder underwent surgery on his left elbow in October 1993 to alleviate his arthritis symptoms. (Tr. 298, 362).

Domagas referred Ponder to rheumatologist Thuan Vu for evaluation in October 1998. (Tr. 232). Vu reviewed Ponder's medical history of arthritic flare-ups in multiple joints, including

Ponder's hands, shoulders, and elbows.  On examination, Vu noted no synovitis[2] or gross deformities, but Ponder's left elbow was chronically contracted.  (Tr. 233).  Vu found that Ponder was currently stable and directed Ponder to continue with his current medication regimen.  On May 5, 2000, Ponder reported arthralgia in his hands and left shoulder.  He exhibited mild tenderness in his left hand and fingers, and there was limitation of motion in his left shoulder due to pain. (Tr. 231).

Ponder was referred to orthopedic surgeon James Bonnet, who examined Ponder on July 31, 2000.  (Tr. 166).  Bonnet assessed severe rheumatoid arthritis and a marked right shoulder impingement syndrome.[3]  Ponder also complained of a "locked" left elbow.  (Tr. 161).  Bonnet opined that surgical intervention was necessary.

Ponder had arthroscopic surgery on his left elbow on August 11, 2000.  (Tr. 158-59).  On September 19, 2000, Ponder underwent arthroscopic surgery on his right shoulder and right elbow. (Tr. 151-53).  Ponder saw Bonnet for follow-up care through December 2000.  (Tr. 149-50).  Bonnet described the surgical results on Ponder's left elbow as perfect, but Ponder reported that his right elbow was painful and continued to pop and crackle.  (Tr. 149).  Ponder's shoulder was much improved, with full range of motion and no tenderness.  (Tr. 149).

Vu saw Ponder on April 30, 2001.  Ponder reported doing well over the past several months and he had been taking lower doses of his medications.  (Tr. 229).  On June 21. 2001, Ponder

---

[2] Synovitis is inflammation of the synovial membrane and is usually painful, especially with motion. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1773 (29th ed. 2000).

[3] Impingement syndrome refers to the progressive pathologic changes resulting from mechanical encroachment on the rotator cuff.  *Id.* at 1758.

Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 5

reported severe wrist pain and limitation of motion in his joints, and Vu opined that Ponder's rheumatoid arthritis was not under good control.  Ponder was given a cortisone shot in his right wrist.  (Tr. 226).   On June 25, 2001, Ponder complained of significant pain in his wrists, worse in his right wrist, and a flare-up of shoulder pain.  Vu increased Ponder's dosages of prednisone and methotrexate. Vu also completed paperwork for Ponder's short-term disability carrier.  (Tr. 223).

On August 7, 2001, Ponder complained of right wrist pain and reported that he had recently undergone a surgical evaluation.  An MRI scan of his right wrist confirmed arthritis, (Tr. 143), and on examination, Ponder exhibited tenderness and some mild limitation in that wrist.  (Tr. 222).

Ponder was referred to surgeon Robert Protzman for evaluation in September 2001.   (Tr. 201).  Protzman examined Ponder's wrists and elbows and ordered x-rays and magnetic resonance imaging (an MRI).  The diagnostic studies were consistent with rheumatoid arthritis and erosive synovitis.  (Tr. 201).  Protzman discussed surgical options to treat Ponder's right wrist problems. (Tr. 199).  Bonnet, who had also treated Ponder's right wrist complaints, agreed that wrist fusion surgery was appropriate.  (Tr. 147).  Bonnet also opined that Ponder could not perform the significant overhead activities required in his job as a mechanic.  (Tr. 146).

When Ponder saw Vu on November 6, 2001, he reported that he was scheduled for wrist surgery the following month.  Ponder exhibited persistent tenderness and limitation in his wrist, and mild limitation was also noted in his shoulders.  (Tr. 219). Ponder underwent surgery on his right wrist on December 6, 2001.  (Tr. 169).  He saw Protzman on January 30, 2002, and complained of discomfort with extreme range of motion.  (Tr. 195). At a follow-up visit four months after surgery, Ponder reported relief from pain, but the motion in his wrist was not as good as he had expected.

(Tr. 193).  Wrist flexion and extension was limited to twenty degrees.  (Tr. 193).  Ponder's pinch and grip strength was estimated to be 75% of that in his other wrist.  Ponder was told to return in one year for a follow-up visit.  (Tr. 193).

Ponder returned to Vu's office on March 28, 2002 with complaints of aches and pain in his hips, ankles, wrists, and hands.  (Tr. 210).  He had stiffness and moderate tenderness in his joints.  Vu diagnosed polyarthralgia, severe pain and stiffness, and a significantly high joint count.  Ponder's medications were increased.  (Tr. 210).  During a follow-up visit on May 8, 2002, Ponder reported doing somewhat better.  He still had some discomfort and limitation in his shoulders and hands, but active inflammation and pain were improved.  Vu noted mild limitation in Ponder's wrist and fingers, but no active synovitis, and Ponder demonstrated good range of motion in his shoulders. (Tr. 206).

Domagas completed a physician's statement in June 2002 in which he opined that Ponder could not perform the basic exertional work activities required in a typical eight-hour workday.  (Tr. 239).  Domagas opined that Ponder could never lift, carry, push or pull; bend, crouch, kneel, or climb; reach in any direction; use his hands or fingers repetitively; flex or extend his neck; or use vibrating equipment.  Domagas also opined that Ponder could not sit, stand or walk for any length of time.  (Tr. 239). Domagas completed a second statement in August 2003 in which he opined that Ponder was totally disabled by rheumatoid arthritis that caused severe joint pain of the hips, ankles, elbows, wrist, shoulders, and fingers with any repetitive motion.  (Tr. 288).

2.      Administrative Hearing

Ponder testified that he was born June 14, 1961.  He completed high school, and last worked

as an aircraft quality control inspector.  (Tr. 369-70).  He worked for the same employer for twenty-two years.  (Tr. 374).  He testified that the job had required lifting of items weighing up to 150 pounds and climbing to access various parts of the aircraft.  (Tr. 375-76).  He testified that in the four or five years before he stopped working he had often used his vacation time for doctors' appointments because his employer disapproved of employees who missed too much work.  (Tr. 377-78).

Ponder testified that he was under a doctor's care for rheumatoid arthritis and high blood pressure, and generally saw his doctor bimonthly.  (Tr. 371).  Ponder testified that rheumatoid arthritis caused pain in just about every joint of his body on a continual basis.  He testified that his elbows, wrists, and fingers were the most painful, but he also had significant pain in his shoulders.  (Tr. 372).  Ponder testified that hip pain prevented him from standing for more than thirty or forty minutes and he needed to shift positions every fifteen minutes when sitting.  (Tr. 373).  He used prednisone for pain relief, and testified that without his pain medications, he would be in pain beyond belief; however, he had been cautioned that too much prednisone could cause liver or kidney damage.  (Tr. 380).  Ponder also used hydrocodone for pain, but testified that the medication made him feel sleepy and less alert.  (Tr. 387-88).

Ponder testified that he went to bed at 10:00 p.m.  (Tr. 382).  He used seven or eight pillows to position himself while sleeping to minimize pain and swelling in his joints, and testified that he took hot showers every morning to relieve the stiffness in his joints.   Ponder testified that he took his son to school everyday and then returned home to take a nap because he slept only three or four hours at night.  (Tr. 383).  Ponder testified that his son, who was eleven years old, helped with the

housework and mowed the lawn.  (Tr. 384).  Ponder testified that he talked with friends on the

telephone, but was limited in his ability to socialize.  (Tr. 386).  He used to coach his son's baseball

team, but was unable to do that anymore.

Ponder's doctor had told him to avoid repetitive use of his elbows, and he testified that

repetitively turning his hand was painful for him.  (Tr. 388-90).  In addition, the prednisone had

caused deterioration in his bone mass comparable to that of an eighty-year-old man.  (Tr. 391).

Vocational expert Barbara Dunlap attended the hearing.  The ALJ asked Dunlap to consider

> a younger individual with a high school education and the same work history as Mr.
> Ponder.  Assume the individual can perform a full range of light work with these
> limitations.  Only occasional overhead work, limited range of motion of the right
> dominant wrist.  Specifically, the individual has 20 degrees range of motion each of
> extension and flexion.  So again, limited range of motion of the right wrist, as I just
> described.  And, finally, only occasional repetitive motion with the right hand and
> wrist.  I assume, of course, the individual cannot perform any of Mr. Ponder's past
> work.  In your opinion, is there work existing in significant numbers in the national
> economy that such a person could perform?

(Tr. 392).  Dunlap testified that there were several light, unskilled jobs that would be suitable.

Examples included work as an usher, with 2,000 to 4,000 jobs in Texas and 60,000 to 80,000 jobs

nationally; a restaurant host, with 3,000 to 4,000 jobs in Texas and 60,000 to 90,000 jobs nationally;

information clerk, with 2,000 to 4,000 jobs in Texas and 60,000 to 80,000 jobs nationally; and

cleaner positions, with 8,000 to 12,000 jobs in Texas and in excess of 100,000 jobs nationally.  9Tr.

392).

3.     ALJ Decision

The ALJ found that Ponder had not engaged in substantial gainful activity since June 27,

2001.  The ALJ also found that the medical evidence established that Ponder had rheumatoid

arthritis, but the ALJ found no impairment or combination of impairments meeting or equaling in severity any impairment included in the Listing of Impairments. (Tr. 16). The ALJ also considered Ponder's subjective complaints and agreed that Ponder was credible in the sense that he experienced some work-related limitations; however, the ALJ found that Ponder was not precluded from all work activity. Instead, the ALJ determined that Ponder retained the residual functional capacity for a limited range of light work that avoided more than occasional work overhead, avoided more than occasional repetitive motion with his dominant right hand and wrist, and accommodated a range of motion in Ponder's right wrist of twenty degrees in flexion and extension. (Tr. 19). The ALJ found that Ponder was unable to perform any of his past relevant work, but the ALJ accepted the testimony of the vocational expert that there were a significant number of other jobs that Ponder could perform. (Tr. 19-20). Accordingly, the ALJ concluded that Ponder was not disabled for purposes of the Social Security Act and was not entitled to disability insurance benefits. (Tr. 20).

E.      DISCUSSION

        Ponder contends that substantial evidence does not support the administrative decision because the ALJ did not follow the relevant legal standards for weighing treating source opinions. The opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be given great weight in determining disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). The Commissioner assigns controlling weight to the opinion of a treating physician if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527; *Martinez*

*v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995).

Even if a treating source opinion is not entitled to controlling weight under the regulations, that does not mean the opinion should be completely rejected. In many cases, the opinion may be entitled to the greatest weight and should be adopted even if it does not satisfy the test for controlling weight. SOCIAL SECURITY RULING 96-2p. However, the determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *See* 20 C.F.R.. § 404.1527(e); *Leggett*, 67 F.3d at 564; *Greenspan*, 38 F.3d at 237. Before rejecting a treating source opinion, the ALJ must address several relevant factors, including the length of the treatment relationship, frequency of examination, nature and extent of the treating relationship, evidence supporting the opinions, the consistency of those opinions, and medical specialization. *See* 20 C.F.R. § 404.1527(d); *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). *See also* SOCIAL SECURITY RULING 96-2p, 96-5p.

Ponder asserts that Domagas's treating source opinion should have been afforded controlling weight and not rejected because the opinion is well-supported by the clinical and diagnostic evidence. Ponder contends that the ALJ did not give adequate consideration to Domagas's opinion or articulate what evidence he found to be inconsistent with Domagas's opinion. Ponder also contends that the ALJ did not address the relevant factors outlined in the regulations or give good reasons for rejecting Domagas's opinion.

Although the ALJ did not specifically state that he was addressing the factors outlined in the

regulations, his opinion addresses those factors in a narrative fashion.  The ALJ acknowledged Domagas's status as a treating physician and the extreme degree of limitation that Domagas had assessed, (Tr. 17), but the ALJ found the objective evidence did not support a finding of disability or the limitations that Domagas had assessed.  (Tr. 18).  The ALJ agreed that Ponder could not perform his past work, but found there was other work available that did not require the same activities as Ponder's prior work.   (Tr. 18).   In summarizing the evidence, the ALJ also acknowledged that there were periodic exacerbations in Ponder's condition, but noted that Ponder had done well overall with his treatment regimen.  (Tr. 18). Although a more detailed explanation might be preferable, the ALJ's written decision as a whole reflects that the ALJ gave adequate consideration to Domagas's treating relationship with Ponder, Domagas's opinions, and the consistency of those opinions with the other evidence of record.

Ponder contends that the ALJ should have recontacted either Protzman or Domagas regarding Ponder's ability to grasp and turn objects with his hands.  In his decision, the ALJ stated that Protzman had opined that Ponder had good functional grip.  Ponder asserts that the ALJ's statement is inaccurate and demonstrates that the ALJ was making impermissible medical judgments because Protzman's actual opinion was that Ponder's functional grip was "at least as good, and probably better than it was before [surgery]." (Tr. 193).  Ponder contends that the ALJ should have sought clarification on the issue of his functional grip.

The ALJ has a duty to develop the facts fully and fairly, and if he does not satisfy this duty, his decision is not substantially justified.  *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir.2000); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir.1995).  If necessary, the ALJ should recontact a treating

physician to resolve any doubts or gaps in the record. *Newton*, 209 F.3d at 457-58. *See also* 20 C.F.R. §§ 404.1512(e), 416.912(e); Social Security Ruling 96-5p. But the failure to request additional information from treating or examining sources is reversible error only if prejudicial. The claimant must establish prejudice by showing that, if the ALJ had developed the record, additional evidence would have been produced that might have led to a different decision. *Newton*, 209 F.3d at 458.

The ALJ reviewed Ponder's surgical history and Protzman's subsequent progress notes, including Protzman's observation that Ponder demonstrated a right-sided grip that was approximately 75% of that in his left hand. (Tr. 16-17). The ALJ limited Ponder to light work with additional functional restrictions due to Ponder's limited range of motion in his dominant hand. Ponder does not identify what additional evidence the ALJ could have obtained upon recontacting Protzman or Domagas that might have altered the ALJ's assessment of Ponder's residual functional capacity. To the extent that the ALJ overstated Protzman's opinion, no prejudice has been shown.

Ponder also contends that the substantial evidence does not support the ALJ's credibility assessment. In evaluating a claimant's subjective complaints, the ALJ first considers whether there is a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms. 20 C.F.R. § 404.1529(b); SOCIAL SECURITY RULING 96-7p. A claimant's testimony about his symptoms must be consistent with the objective medical evidence and other available evidence. 20 C.F.R. § 404.1529. Once the impairment is found, the ALJ then evaluates the intensity, persistence and limiting effects of the symptoms on the claimant's ability to do basic work activities. 20 C.F.R. § 404.1529. Factors to consider include (1) the claimant's daily

activities; (2) the location, duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) the medication used to alleviate the pain; (5) other treatment measures; and (6) other relevant factors.  20 C.F.R. § 404.1529(c).

An ALJ's unfavorable credibility evaluation will not be upheld on judicial review where the uncontroverted medical evidence shows a basis for the claimant's complaints unless the ALJ weighs the objective medical evidence and articulates reasons for discrediting the claimant's subjective complaints. *Falco v. Shalala,* 27 F.3d 160, 163 (5th Cir.1994); *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988).  The ALJ is not required to give precedence to subjective evidence over objective medical evidence.  *Hollis*, 837 F.2d at 1385.

The ALJ considered Ponder's complaints, but noted that even moderate levels of pain and functional loss were not incompatible with all work activity.  (Tr. 18).  The ALJ found that Ponder demonstrated only mild loss in his range of motion in most joints, with more restrictive functioning in his right wrist.  The ALJ also recognized that Ponder's rheumatoid arthritis flared up at times, causing more pain and functional loss.  The ALJ found Ponder credible in the sense that he was limited and agreed that some work-related limitations were reasonable, but found Ponder was not so limited as to be disabled for purposes of the Social Security Act.  (Tr. 18).  The ALJ did not ignore Ponder's complaints, but instead included work-related restrictions to accommodate Ponder's pain and functional limitations that the ALJ found supported by the other evidence in the record. Specifically, the ALJ limited Ponder to light work, which precluded him from returning to the heavy lifting requirements of his previous job, with limitations in his ability to perform overhead work or repetitive-motion types of work and restrictions in the functional use of his right wrist. (Tr. 19). The

ALJ sufficiently stated his reasons for finding Ponder's subjective complaints were partially credible, but not credible to the disabling degree alleged.

RECOMMENDATION

It is recommended that the decision of the Commissioner be affirmed.

NOTICE OF RIGHT TO OBJECT TO PROPOSED<br>FINDINGS, CONCLUSIONS AND RECOMMENDATION<br>AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until January 8, 2007. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until January 8,

2007 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation.  It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED DECEMBER 18, 2006.


      /s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE